UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EMMANUEL PATTERSON,

       Petitioner,

  v.                                          17-cv-846
                                                     DECISION & ORDER

JAMES P. THOMPSON,

       Respondent.

_____

       The petitioner, Emmanuel Patterson, has been serving a sentence of 20 years to life since he pled guilty to murder in the second degree in New York State Supreme Court, Erie County, in 1979. He now has filed his third petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254, challenging his conviction and his sentence. Docket Item 1 (the "third" or "instant" petition). In the instant petition, Patterson claims that (1) New York State's indeterminate sentencing scheme, New York Penal Law Section 70.40(1)(a), was unconstitutionally applied to him in 1979 inasmuch as he was not advised about the parole component of his sentence before his plea and sentencing; and (2) established federal and state procedures were "ignored and circumvented[,] leaving the State Board of Parole without proper legal justification and authority in the execution of petitioner['s] sentence after completion of the twenty-year minimum term of imprisonment per plea-agreement." Docket Item 1, at 6, 7, 16, 17.[1]

---

[1] Page references are to those generated by the Court's Case Management and Electronic Case Filing System (CM/ECF).

**PROCEDURAL BACKGROUND**

Patterson's first petition challenging his conviction, *Patterson v. Corr. Dept.*, 83-CV-840-JTC ("first petition"), was filed in 1983 and denied on the merits in 1987. The second petition, *Patterson v. Berbarry*, 04-CV-122-HKS ("second petition"), was filed in 2004 and transferred to the United States Court of Appeals for the Second Circuit as a second or successive application under 28 U.S.C. Section 2244(b)(3)(A).[2] 04-CV-122 Docket Item 4. Upon transfer, the Second Circuit found that because claims five to

---

[2] 28 U.S.C. Section 2244(b) provides, in relevant part:

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

twelve of the second petition did not challenge the same judgment of conviction as the first petition but rather challenged the denial of Patterson's parole—an issue that had not arisen at the time of the first petition—that portion of the second petition was not a "second or successive application" within the meaning of Section 2244(b). The Second Circuit therefore transferred claims five to twelve of the second petition back to this court and noted that the court could require Patterson to file an amended petition. 04-CV-122 Docket Item 5.

The Second Circuit found that the remaining claims in the second petition—claims one through four—did challenge the same judgment of conviction that the first petition challenged. The court noted, however, that it had not yet decided whether the second or successive application rule ("gatekeeping provisions") of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applied to a proposed second petition when, as in Patterson's case, the first petition had been filed before AEDPA's effective date.[3] But the Second Circuit found that it did not need to decide this issue because "[u]nder the standard that existed prior to AEDPA, the petition would not be entertained inasmuch as [the petitioner] . . . failed to show cause for failing to raise the claims in his first petition and prejudice therefrom or that failure to hear the claims would result in a fundamental miscarriage of justice." Docket Item 5 (citing *McClesky v. Zant*, 499 U.S. 467, 494-95 (1991)). The

---

[3] *See Maldonado v. United States*, 344 F.3d 244, 246 (2d Cir. 2003) (declining to address issue because, even before enactment of AEDPA, petitioner would not have been permitted to filed a second petition); *Torres v. Senkowski*, 316 F.3d 147, 151 (2d Cir. 2003) (same); *see generally* Brian R. Means, *Federal Habeas Manual* § 11:7 (Westlaw 2017) ("The Second and District of Columbia Circuits have declined to resolve the issue."). The Second Circuit still has not decided the issue.

3

Second Circuit therefore denied Patterson's second or successive application with respect to claims one through four of the second petition.

After claims five through twelve in his second petition were sent back to this court, Patterson was given an opportunity to file an amended petition. He filed an amended petition, but he then sought to withdraw it without prejudice, and the court entered an order dismissing the amended petition without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(i), the predecessor to Fed. R. Civ. P. 41(a)(1)(A)(i). Docket Item 9.

In light of that history, this court must determine whether the third petition is a "successive application" that should be transferred to the Second Circuit for authorization under 28 U.S.C. Section 2244(b)(3)(A).

## DISCUSSION

### I. THIRD (INSTANT) PETITION

#### A. Grounds for relief

The instant petition was filed on August 28, 2017, and raises two grounds for relief based on the same supporting facts. Docket Item 1 at 6, 7, 16, 17. The first alleges that New York's indeterminate sentencing scheme, New York Penal Law Section 70.40(1)(a), was unconstitutionally applied to Patterson in 1979—when he entered his plea of guilty and understood that his sentence would be twenty years to life—because there was no discussion or explanation about parole "being a part of the of the plea-agreed twenty[-]year minimum term of imprisonment." Docket Item 1 at 6, 7. Patterson now claims that the plea discussions between him and his attorney were limited to how much time he would need to serve in prison before he would be released. He says that no one—not the court, defense counsel, or the district attorney—advised

4

him about the parole consequences of his sentence before he accepted the "twenty-year plea-agreed indeterminate sentence."[4]  Docket Items 1 at 6-8; 1-1, Ex. A at 4-14 (Guilty Plea Minutes, Aug. 27, 1979).

The second ground, which explicitly relies on the same supporting facts, states that "[t]he procedures as required by clearly established United States Supreme Court precedents and federal standards of due process were ignored and circumvented the State Board of Parole without proper legal jurisdiction and authority in execution of petitioner['s] sentence after completion of the twenty-year minimum of imprisonment per plea-agreement."  Docket Item 1 at 16-17.

After serving twenty years of his twenty-year-to-life sentence, Patterson was referred to the State Division of Parole for his first parole release hearing in January 1999.  He was denied parole following that first appearance, and he has since been denied parole after each of his next six or more appearances before the Parole Board.  Patterson claims that as of 2013, he had served twelve years beyond his agreed-upon minimum term of imprisonment.  Docket Items 1 at 8; 1-1 at 24-28.

Patterson alleges that at his parole release hearing on November 6, 2013, the Board of Parole acknowledged that the Correctional Offender Management Profiling for Alternative Sentences (COMPAS) measured his risk at the "very lowest of categories of Risk to Abscond, Risk to Commit any [Violent] Felony or even a Risk of Arrest."  Docket

---

[4] Though Patterson acknowledges that before entering his plea he understood his sentence would be twenty years to life—a range he could not outlive—he appears to have misunderstood that to mean he would presumptively be released after twenty years.  Patterson appears to argue that because no one explained he could be denied release after twenty years—even if he followed the rules and met the conditions for release, whatever he thought those were—a constitutional violation has occurred.

5

Items 1 at 8; 1-1, Ex. E at 30. He says that after his administrative appeal was denied, he filed a state habeas corpus petition challenging New York's indeterminate sentencing scheme. Docket Item 1 at 9-10. That petition was converted to a N.Y. C.P.L.R. Article 78 proceeding and denied on October 21, 2014. *Id.* at 11. Patterson attempted to appeal directly to the New York Court of Appeals, but the Court of Appeals transferred the appeal to New York State Supreme Court, Appellate Division, Fourth Department. The Appellate Division affirmed the denial of the petition, and Patterson's application for leave to appeal to the New York Court of Appeals was denied on June 14, 2016. Patterson filed a petition for a writ of certiorari with the United States Supreme Court, and that was denied on October 31, 2016. Docket Items 1 at 10-15; 1-1, Ex. K at 76-79; 1-2, Exs. L-CC; 1-3, Exs. DD-QQ at 1-101. He then filed the instant petition.

## B. Second or Successive Petition

"AEDPA imposes stringent limits on a prisoner's ability to bring a second or successive application for a writ of habeas corpus. AEDPA's gatekeeping provisions require that second and successive § 2254 applications be dismissed unless the claim relies on a new rule of constitutional law, made retroactive by the Supreme Court[,] or presents facts that could not have been discovered previously and tend to show actual innocence." *Torres v. Senkowski*, 316 F.3d 147, 150 (2d Cir. 2003) (internal quotations omitted). A petition is a second or successive application when (1) it challenges the same judgment challenged in a prior petition, *Vasquez v. Parrott*, 318 F.3d 387, 390 (2d Cir. 2003), (2) it "raises a claim that was, or could have been, raised in an earlier petition," *James v. Walsh*, 308 F.3d 162, 167 (2d Cir.2002), and (3) the earlier petition

6

was adjudicated on the merits, *Murray v. Greiner*, 394 F.3d 78, 80 (2d Cir. 2005) (citations omitted).

"Even prior to the enactment of AEDPA . . . it was well established that a habeas petition could be dismissed for abuse of the writ if it asserted a claim that petitioner could have raised in a prior petition." *Roccisano v. Menifee*, 293 F.3d 51, 58 (2d Cir. 2002). The pre-AEDPA abuse-of-writ standard, as enunciated by the Second Circuit, generally required that:

> a petitioner seeking to file a second or successive petition raising a claim that he failed to include in his initial petition show cause for failing to raise it and prejudice therefrom. To establish cause, the petitioner must show that some objective factor external to the defense impeded counsel's efforts to raise the claim in the prior petition—factors such as interference by officials or the unavailability of relevant facts. To establish prejudice, the petitioner must show actual prejudice resulting from the errors of which he complains. He must establish, in other words, that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

*Id.* at 58-59 (quotations, citations, and emphasis omitted).

The instant petition—at least the first ground for relief in the instant petition—is Patterson's third attempt to challenge his 1979 conviction and sentence. If that means this petition is a "second or successive application" for purposes of AEDPA's gate-keeping mechanism, then it must be transferred to the Court of Appeals so that court can decide whether to authorize it. 28 U.S.C. § 2244(b)(1)-(3) (second or successive applications must be authorized by the appropriate court of appeals); *see Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996) ("when a second or successive petition for habeas corpus relief . . . is filed in a district court without the authorization by [the Second Circuit] that is mandated by § 2244(b)(3), the district court should transfer the petition . . . in the interest of justice pursuant to § 1631").

7

As noted above, the Second Circuit has yet to decide whether AEDPA's second-or-successive-application rule applies to what may be a successive application when the prior petition was filed before the AEDPA's effective date—as is the case with the instant petition and as was the case with the second petition. *See, e.g.*, *Torres*, 316 F.3d at 151 ("We have not yet decided whether applying AEDPA's gatekeeping requirements in these circumstances would create an impermissible retroactive effect.") (citations omitted). In *Torres*, as in other cases before and after *Torres*, *e.g.*, *Maldonado v. United States*, 344 F.3d 244, 246 (2d Cir. 2003); *Roccisano*, 293 F.3d at 56-61; *Rodriguez v. Mitchell*, 252 F.3d 191, 202 (2d Cir. 2001), the Second Circuit declined to answer that question because it found that under both the AEDPA's second-or-successive-application rule and the pre-AEDPA abuse-of-writ doctrine, the subsequent habeas application would not be authorized. *Torres*, 316 F.3d at 151.

Aware of the potential confusion that could arise from its decision not to decide this issue, and in order to "reach a coherent result," the Second Circuit expressly held in *Torres* that "AEDPA's authorization requirement applies to all second and successive habeas petitions, even those that *may* be governed by the pre-AEDPA abuse-of-writ standard. . . . Thus, regardless of the applicable substantive standard, AEDPA requires all second and successive habeas applications to be authorized by the appropriate court of appeals." *Id.* at 153-54.

Accordingly, because the instant petition is a second or successive application to which either the AEDPA or the pre-AEDPA abuse-of-writ doctrine applies, it must be transferred to the Second Circuit for authorization. *See id.* The instant petition challenges the same conviction and sentence as the first petition; it raises claims—e.g.,

8

that prior to his plea of guilty Patterson was not advised of the parole consequences of his indeterminate sentence of twenty years to life—that could have been raised at the time Patterson filed the first petition; and the first petition was adjudicated on the merits.

Finding that the petition is a second or successive application is not the same as finding that each individual claim in the petition is second or successive. As the Supreme Court noted in *Magwood v. Patterson*, 561 U.S. 320, 334 (2010), "AEDPA uses the phrase 'second or successive' to modify 'application.'" In doing so, the court rejected the argument that "second or successive" modified the word "claims" because that would render superfluous Section 2244(b)(2) exceptions to dismissal. *Id.* at 334-35. Therefore, if one claim in the petition meets AEDPA's authorization requirements—Patterson's first claim in this instance—the petition is a second or successive application and requires circuit court authorization. *See id.*; *see also United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("Because the authorization requirement applies to the entire application, the jurisdictional effect of [Section] 2244(b)(3) extends to all claims in the application, including those that would not be subject to the limits on successive applications if presented separately.")

At least on its face, Patterson's petition seems to include both a successive claim and an otherwise reviewable claim. *See id.* For such petitions, the Fourth and Eighth Circuits have held that a district court should afford the petitioner the choice of either "seeking authorization from the court of appeals for his second or successive claims, or of amending his petition to delete those claims so he can proceed with the claims that require no authorization." *Winestock*, 340 F.3d at 206 (quoting *Pennington v. Norris*, 257 F.3d 857, 859 (8th Cir. 2001)). The Second Circuit does not appear to have

spoken on this issue, however. Therefore, having found that at least one claim in Patterson's petition is second or successive, this court transfers the petition to the Second Circuit as a second or successive application.

## **CONCLUSION**

For the above reasons, this court ORDERS that the petition be transferred to the United States Court of Appeals for the Second Circuit.

SO ORDERED.

Dated:   November 3, 2017
         Buffalo, New York

                                          *s/Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE